*Court of Common Pleas, Dauphin County, December 26th, 1857.*

## BOYER ET AL. *v.* THE NORTHERN CENTRAL RAILWAY COMPANY.

A corporation cannot take a stay of execution. The thirty days within which damages assessed by viewers against railroad companies must be paid under section 11 of the act of February 19th, 1849, is not such a stay of execution as is contemplated by section 6 of the act of October 13th, 1857. Where a certain number of days are given by law within which to do an act, one of them is included and the other excluded. (Thomas *v.* Afflick, 4 H. 14, and Barber *v.* Chandler, 5 H. 48, doubted.)

BY THE COURT.—On an assessment of damages made by viewers in favor of the plaintiff above named, judgment was entered by the court, October 10th, 1857. On the 10th of November, following, a *fi. fa.* was issued on the judgment, and property of defendant levied on. On November 12th, on security for the debt being entered, the execution was stayed, and an order made to suspend all further process for one year, from October 13th, 1857. On November 17th, a motion was made by plaintiff's counsel to rescind the order on three distinct grounds. 1. The defendant, being a corporation, does not come within section 6 of the act of October 13th, 1857. 2. It has already enjoyed the

benefit of the stay of execution.    3. The application was not made, and security entered in time.    None of the acts of Assembly heretofore in force in this State gave a stay of execution to corporations. Though not excluded from their operation by name, yet they are by the clearest implication.    The act of March 24th, 1806 (4 Smith's Laws, 429) is the prototype of that of June 14th, 1836 (Dunlop, 809).    From the former the latter law was framed.    They both give the stay for certain periods of time, if the defendant is possessed of a freehold to a certain amount clear of all incumbrances; but if he is not, execution may issue forthwith, unless security in the nature of *special bail* is given.    On that being done, a stay is secured for thirty days, and for a further time on giving security for debt, etc.    A corporation can by no possibility enter special bail, nor security of that nature.    It cannot be surrendered, which is essential to the character of special bail.    Hence, without any express words, it is excluded from the benefit of both of our general laws on the subject, and always has been.    The words of the acts are applicable to individuals in their natural capacity alone, and not to artificial persons.    Did the legislature intend to change the system by section 6 of the act of October 13th, 1857?    All the words of that section seem rather to apply to natural than to artificial persons.    In fact, some expressions are wholly inapplicable to corporations.    It says: " If the defendant shall be possessed of any estate in fee simple, within the respective county," worth, etc., " over and above all incumbrances, *and the amount exempt from levy and sale on execution,* he shall be entitled to a stay, etc." Now it is well known that no portion of the property of a corporation is exempt from levy and sale; of course, it could not have been within the contemplation of the legislature.    The expression tends as strongly to show the meaning of the law-making power, as the provision for entering special bail under the acts of 1806 and 1836; both of which have always been construed to be inapplicable to corporations.    The words of the act of 1857 are very general; but their whole tenor seems applicable to the case of natural persons.    Yet, without the provision referred to, we might be unable to exclude corporations; but those words, in our opinion, show clearly that it was the intention to embrace only those persons, who, as a class, could claim the exemption of a portion of their effects from execution.    It may be supposed that, as the general scope and object of the act was to furnish relief to a certain class of corporations, the banks of the State; and as they were by this section precluded from collecting the debts due them for one year, a similar indulgence was intended to be extended to, them; and if they are embraced within this section, all other corporations would be as a necessary consequence.    We did not find in any portion of the act a disposition to relieve that class of corporations from their common-law responsibility to pay their debts; but

[Boyer et al. *v.* The Northern Central Railway Company.]

merely to exonerate them from the penalties and forfeitures imposed by other statutes. The common-law remedy by recovery of a judgment, execution, and sale of property remains as before this act was passed. It is not the policy or duty of the courts to take it away, unless the legislature had clearly so provided. We believe that the remedy upon contracts should not be disturbed, but remain as heretofore. The order staying the proceedings for one year, was improvidently made in this case, and must be rescinded. The security given was not authorized by law, and the recognizance to secure the debt must be discharged. As this order is decisive of the case for the present, it might be considered unnecessary for the court to express any opinion on the other points; but as the question may come before the Supreme Court on a writ of error, we will give our views on those also. Section 11 of the act of February 19th, 1849, under which the damages were assessed in this case, provides that after confirmation of the report of viewers, judgment shall be entered thereon; and if the amount thereof be not paid within thirty days after the entry of such judgment, execution may issue, etc. Is this such a stay of execution as is contemplated by the proviso to section 6 of the act of October 13th, 1857? That it is a *cesset executio* for thirty days, there can be no doubt; but is it given for the purpose for which stays are allowed by our laws to enable the defendant to raise the money with less inconvenience? In all other laws enacted for the purpose of giving a *cesset*, the time is scaled by the amount of the judgment; here it is the same, whether the sum be ten dollars or ten thousand. In the other cases it depended on the safety of the debt by it being a lien on freehold estate, or security given for payment. Here no execution can issue, whether the defendant owns any freehold, or is insolvent. Under the other laws the stay must be claimed by the defendant; here it is made part of the conditions of the judgment. To me it seems rather in the nature of that kind of suspension of execution, which is given on judgments rendered on special verdicts or cases stated, to enable the party to sue out a writ of error. It is a condition annexed to the judgment rendered in a summary proceeding out of the course of the common law, and need not be claimed by the defendant. Therefore, it is not taken, as provided in the act of 1857, but is conferred, probably, to enable the railroad company to sue out a writ of error. Had the law been then, as it is now, we should say it was to give the party time to enter an appeal, and claim the trial by jury; but as that provision did not then exist, it cannot aid us in interpreting the statute. If necessary, we shall decide that the defendant has not taken the stay of execution, and is not precluded from claiming it by the proviso.

The question of time is the last point for consideration. The act of Assembly was passed October 13th, 1857. The security

[Boyer et al. *v.* The Northern Central Railway Company.]

was entered, and stay of execution claimed November 12th. If one day is to be computed as inclusive, and the other as exclusive, this is within the time prescribed by law. If both days are to be taken as inclusive, the defendant is one day too late. Section 6 of the act of Assembly, gives a stay " on judgments now obtained, or to be obtained on suits now brought, for the time of one year from the date of the passage of this act, and on all others for one year, to be computed from the first day of the term to which the action was commenced. And every defendant in such judgment may have the same stay of execution thereon, if within thirty days from the passage of this act, or within thirty days from the rendition of any future judgment, he shall give security, etc." As early as 1815, an act of Assembly, worded substantially like the present, received a judicial construction from the Supreme Court of this State (Sines *v.* Hampton, 1 S. & R. 411). It was held that in computing time the one day must be included, the other excluded, as the act was intended to give the entire number of days named, and if the transaction took place on the last moment of the first-mentioned day, the party would have in reality but nineteen days to do that for which the law designed he should have twenty. There can be no fractions of a day, except for certain special purposes. In 1831 the subject again came before the same court, which laid down this general, plain and simple rule : " Whenever by a rule of court, or an act of the legislature, a given number of days are allowed to do an act, or it is said an act may be done within a given number of days, the day on which the rule is taken, or decision made, is excluded " (Goswiler's Estate, 3 Penna. 200). So the law stood unquestioned and undoubted for about twenty years. It had regulated the conduct of parties, directed the action of counsel, and controlled the judgments of all the courts of this commonwealth, both inferior and superior. But then, unfortunately, a case arose in which, for the purpose of sustaining an action improperly brought, the rule was overturned, and the principle of the preceding cases shaken, if not overturned. And to what end? That we might have again introduced the finespun metaphysical distinctions which had agitated the English courts for over a century, and caused as many contradictory decisions, and as much waste of sophistical reasoning, as any of the numerous hairsplitting questions concocted by the scholiasts. Any jurist who will take the trouble to read the opinion of Lord Mansfield, in Pugh *v.* The Duke of Leeds (Cowper, 714), and the numerous cases referred to by him, will be struck with the impropriety of again opening this vexed question, and turning the people, the legal profession, and the courts into a sea of metaphysics, without chart or compass. The conflicting decisions puzzled even Lord Mansfield. It is wholly unimportant what rule is adopted, pro-

[Boyer et al. *v.* The Northern Central Railway Company.]

vided it is adhered to, as there is no difficulty in the business of the country conforming itself to it. But it is difficult to follow a system of perpetual change. Even the presumption of twenty years' constant acquiescence settling a legal principle in Pennsylvania does not appear to hold good in this case. Although an inferior court, and acknowledging fully the obligation to be governed by the decisions of those placed above us, we are not disposed to depart from the ancient rule for the computation of time in Pennsylvania, unless the question shall be settled on full and deliberate consideration. The point came up in Thomas *v.* Afflick (4 H. 14), and was very summarily disposed of, as we believe, without proper consideration, in order to support an action improperly commenced. There is a short *per curiam* opinion in which the case of Goswiler's Estate is questioned, but not overruled. The next mention of the subject is in Barber *v.* Chandler (5 H. 48), where the question did not arise, and, therefore, all that is said may be considered *obiter dicta*. It is relative to the time of serving a summons issued by a justice. Only four days intervened, provided one day should be included, and the other excluded, but five days if both were included. There was an appearance by agent, which was the same as in person, and cured the want of notice, which was the main point, but the court said the service was good. This, in our humble judgment, is contrary to the general practice and received opinion of nearly every justice in the State. It is also contrary to the settled practice as to issuing writs of summons out of court, which cannot be done after the Friday next but one preceding the return day, being ten days exclusive of the day of issuing. The same custom has always prevailed in computing the time for service of similar writs; also as to appeals from awards of arbitration and judgments rendered by justices of the peace. There is, perhaps, but little doubt that the common-law method of computing time is to include both days, and this has been adopted even in the construction of statutes, depending in some measure on their peculiar words. As in Douglas, 446; 3 East, 407; 3 Term Rep. 623. Yet under the enrolment act (27 H. VIII, c. 16), which provides that all deeds must be enrolled within six months next after the date of the instrument, one day is to be included, the other excluded (Dyer 218). Many cases might be cited under other statutes to the same effect. For a long period the English judges drew a distinction between the words, " from the date," and " from the day of the date." They at length had the sagacity to discover that they meant the same thing. Judge Washington lays down a rule of good sense, which might be readily followed: " Where the expressions are 'from the date,' I understand the rule to be, that if a present interest is to commence from the date, the day of the date is included, but if they are used merely

to fix a terminus from which to compute time, the day is in all cases excluded." (Purpoint & Lord *v.* Graham, 4 W. C. C. R. 240.) Judge Rogers adopts substantially the same rule in Lysle *v.* Williams, 15 S. & R. 135. The provision in this statute we understand to be merely fixing a day from which to compute time. There is rarely much difficulty in construing contracts or other instruments between parties. For the most part it can be ascertained from the context, whether the parties do, or do not intend to pass a present interest, and when that rule fails, the words shall be most strongly construed against the speaker, and in favor of those receiving a benefit under the writing. But no such principle can be invoked to aid in the construction of a statute. Possibly in the present case, as in Sines *v.* Hampton, the most favorable construction should be put on the act of Assembly to favor debtors, as the object is to confer on them a benefit; but I think the general rule, which so long prevailed in this State, should not be departed from, and should apply to all cases arising under acts of Assembly. If the courts are unwilling to lay down a general rule, or allow the one long in use to govern, the principle should be fixed by a general statute, so that all persons might understand the law, and their rights and duties under it. We are of the opinion that the bail in the present case was entered in time; but for the reasons already given, it is inoperative.

*Fisher, for plaintiff.*

*Kunkel and Lawrence, for defendant.*